LAUGHLIN, Appellant, vs. GRISWOLD and others, Respondents.

*November 10—December 5, 1922.*

*Trusts: Quarrel between trustee and cestui: Hostility to interest of cestui: Removal of trustee: Compensation: Waiver.*

1. While the mere fact of a quarrel between a trustee and the *cestui que trust* is not ground for removal of the trustee, such fact in connection with other facts and circumstances may be considered in determining whether there was an abuse of discretion in removing him.

2. In the case of a trust not coupled with any interest in the trustee, the welfare of the beneficiaries constitutes the chief matter for consideration.

3. An open, avowed hostility of the trustee to the interests of one of the beneficiaries as against the interests of a third person justifies his removal.

4. A trustee who was a personal friend and the legal adviser of the creator of the trust will be held to have waived any right to compensation other than reimbursement for actual expenses paid, where the estate consisted of long-time bonds, and the execution of the trust required little more than the clipping of coupons and making payments to the beneficiary, except reinvestments from time to time and safe keeping of the bonds, and where no claim for services was made for more than a quarter of a century and until trouble arose with a beneficiary.

5. A trustee having been properly removed has no further interest in the question of whether a co-trustee was properly appointed.

APPEAL from a judgment of the circuit court for Milwaukee county: WALTER SCHINZ, Circuit Judge. *Affirmed.*

This case was here on a former appeal and is reported in 169 Wis. 50 *et seq.* (171 N. W. 755). The facts as to the nature of the trust, trustees, and *cestuis que trustent* are there set forth.

The trial court, upon the issues raised by the answer and counterclaim interposed by the defendants *Emily A. Griswold, Ellen Griswold,* and *Morris Tucker,* found that *Morris Tucker* was lawfully appointed trustee as successor

of Charles W. Baker, deceased; it removed plaintiff as trustee because of a number of slight alleged irregularities in the handling of the estate, and especially because of the ill feeling existing between the trustee and the *cestuis que trustent,* and it appointed the First Wisconsin Trust Company as trustee in his place. The court further held plaintiff was not entitled to compensation as trustee except as to disbursements, which it adjusted. Plaintiff appealed from the judgment, claiming as errors the confirmation of Morris Tucker as trustee, his own removal as trustee, and the refusal of the court to allow him compensation since the beginning of the trust.

For the appellant there was a brief by *Edgar L. Wood* of Milwaukee, attorney, and *Fred B. Silsbee* of Chicago, of counsel, and oral argument by *Mr. Wood.*

For the respondents there was a brief by *Lawrence A. Olwell,* attorney, and *Olwell, Durant & Brady,* of counsel, all of Milwaukee, and oral argument by *Lawrence A. Olwell.*

VINJE, C. J. The trial court found that plaintiff, as trustee, in a number of instances failed to execute the trust with that degree of fidelity and care required of a trustee. We shall not set out or discuss these irregularities because a consideration of the whole evidence convinces us that they have not occurred through any serious negligence or wilful misconduct on the part of the trustee. We are satisfied that on the whole he administered the trust reasonably well up to the time of the commencement of this action. Some of the more serious delicts were met by very persuasive counter evidence and explanations that have satisfied us that he at all times, up to the time of the commencement of this action, acted in good faith and with reasonable care and diligence. We shall therefore not set out the findings of the trial court in this respect, nor comment upon that phase of the testimony. We find, however, upon examining the

evidence that a state of serious antagonism has arisen between the trustee and the *cestuis que trustent*. Whether the trustee is more to be blamed for the existence of this antagonism than the *cestuis que trustent* we need not determine. It does appear, however, that the trustee has continuously acted in a firm, unyielding manner, and has been quite deaf to any suggestions made by either of the *cestuis que trustent*. It also appears that he has been violently opposed to the appointment of another trustee since the death of Mr. Baker, claiming that under the terms of the trust he constitutes the sole trustee. The appointment by the *cestuis que trustent* of *Mr. Tucker* as a co-trustee met with his strong disapproval, and it is quite apparent that the two trustees could not act harmoniously. The reason that has chiefly induced us to affirm the result reached by the trial court in removing the trustee is the fact that he has shown an animus antagonistic to the best interests of the *cestuis que trustent*. It appears that after the divorce of Joseph L. Griswold in 1894 from his wife, *Emily A. Griswold,* Mr. Griswold remarried, and upon his death left a widow, *Laura Griswold.* Previous to his death Joseph L. Griswold had conveyed all his interest in the trust securities, subject to the life estate of his wife, *Emily A. Griswold,* to his daughter, *Nellie Griswold,* so that since his death *Emily A. Griswold* and *Nellie Griswold* have been the sole equitable owners of the trust securities. The plaintiff from time to time, as is shown by correspondence and otherwise testified to, has suggested, if not claimed, that *Laura Griswold* has, or may have, some legal claim to the trust securities; while the fact is that *Laura Griswold* never has made any claim to them. Upon the trial the plaintiff testified, among other things, as follows:

"But I would have resigned this trust if *Nellie Griswold* had requested me to in the beginning. But she did not take that course. She tried to force *Mr. Tucker* in regardless of my wishes, and he was a stranger to me. The real fact of the matter is not that I want to dictate who this co-trustee

shall be.  I do not; I do not want anything; I would rather take these bonds to St. Louis and resign.  That would be my preference.  But my judgment is that that would be against the interests of *Laura Griswold,* because *Nellie* could probably beat her there, but I believe *Laura* can beat *Nellie* here in Wisconsin.  That is my candid opinion as a lawyer.  I am speaking now as a lawyer and not as a witness.  But I have no interest in *Laura Griswold.*"

A trustee who expresses a preference for a lawful act, which, if done, would be beneficial to the interests of the *cestuis que trustent,* but who refuses to do that act because the refusal would be beneficial to the interests of a stranger, is not a proper person to administer the trust.  We have, therefore, in this case not only a state of ill feeling existing between the trustee and the *cestuis que trustent* but a statement by the trustee which can be construed in no other light than that he is antagonistic to the best interests of the *cestuis que trustent* and would prefer to see a stranger defeat their interests:  While it is true that the mere fact that a quarrel exists between a *cestui que trustent* and the trustee is not ground for the removal of the latter, yet such fact in connection with other facts and circumstances may be taken into consideration in determining whether or not a trial court has abused its discretion in removing the trustee.  In the case of a trust not coupled with any interest in the trustee, the welfare of the beneficiaries of the trust constitutes the chief matter for consideration.  39 Cyc. 261.  We have here more than ill feeling towards the beneficiaries of the trust.  We have an open, avowed hostility to their interest which of itself would justify a court in removing a trustee who has no interest in the execution of the trust.  The rule stated in *May v. May*, 167 U. S. 310, 320, 17 Sup. Ct. 824, is very applicable in this case.  It is there said:

"The power of a court of equity to remove a trustee, and to substitute another in his place, is incidental to its paramount duty to see that trusts are properly executed; and may

properly be exercised whenever such a state of mutual ill feeling growing out of his behavior exists between the trustees, or between the trustee in question and the beneficiaries, that his continuance in office would be detrimental to the execution of the trust, even if for no other reason than that human infirmity would prevent the co-trustee or the beneficiaries from working in harmony with him, and although charges of misconduct against him are either not made out or are greatly exaggerated. *Uvedale v. Ettrick,* 2 Ch. Cas. 130; *Letterstedt v. Broers,* 9 App. Cas. 371, 386; *McPherson v. Cox,* 96 U. S. 404, 419; *Scott v. Rand,* 118 Mass. 215, 218; *Wilson v. Wilson,* 145 Mass. 490, 493, 14 N. E. 521; 2 Story, Eq. Jur. § 1288."

The case of *Scott v. Rand,* 118 Mass. 215, also discusses a situation quite similar to that found in the case at bar, and it is there said:

"It is not necessary in order to support the application for the plaintiff to show that the trustee has acted from dishonest or selfish motives, and it is but just to say that such a charge is not maintained. It is sufficient that he appears to have so far identified himself with one of two contending parties as to make it proper to grant a request for his removal."

The present trust is a simple one. The trustee has no interest therein. Its further administration by him would be complicated not only by the ill feeling that exists between him and the beneficiaries but by his avowed antagonism to the interest of one of the beneficiaries as against the interest of a third party. Under such circumstances we think the trial court exercised a sound discretion when he removed the plaintiff as trustee.

We also concur in the conclusion that in this case the plaintiff has waived his right to any compensation as trustee except as to actual disbursements made by him. The trustee was the personal friend and legal adviser of the creator of the trust, Joseph L. Griswold. The trust estate consisted of bonds running for a long time, and the execution of the

trust required little more than the clipping of interest coupons and paying the stated amounts of the trust over to *Emily A. Griswold.* It is true reinvestments had to be made from time to time and the trust bonds had to be safely kept, as provided for in the trust instrument. Since 1894 up to the time of the commencement of this action the trustee never claimed and never was paid any compensation for his services. It must have been mutually understood by all the parties that the services rendered were to be gratuitous. It is too late now, after a lapse of a quarter of a century and after ill feeling has been engendered and complications have arisen, to claim compensation.

Since we reached the conclusion that the plaintiff was properly removed as trustee, it follows that he has no further interest in the question as to whether or not *Mr. Tucker* was lawfully appointed a co-trustee, and we therefore refrain from expressing any opinion upon that question. We may add, however, that as the record stands, we see no reason why *Mr. Tucker* and the First Wisconsin Trust Company should not administer the trust.

The trial court allowed the plaintiff $1,500 for legal services in this case, allowed him for disbursements actually paid out as trustee, and allowed him to tax statutory disbursements made by him in this action. In view of such allowances we have reached the conclusion that the plaintiff should have no further allowances for costs, disbursements, or counsel fees upon this appeal.

*By the Court.*—Judgment affirmed.