[Civ. No. 5580. First Appellate District, Division Two.—June 1, 1926.]

LAWRENCE V. OVERELL, Respondent, v. ARTHUR O. OVERELL, Appellant.

[Civ. No. 5581. First Appellate District, Division Two.—June 1, 1926.]

ROBERT E. OVERELL, Respondent, v. ARTHUR O. OVERELL, Appellant.

[1] TRUSTS — CONFIDENTIAL RELATION — CONFLICTING DUTIES—OBLIGATIONS OF TRUSTEE.—In all matters connected with his trust a trustee is bound to act in the highest good faith toward his beneficiary and may not obtain any advantage therein over the latter by the slightest misrepresentation, concealment, threat, or adverse pressure of any kind; and as long as the confidential relation lasts the trustee or other fiduciary owes an undivided duty to his beneficiary, and cannot place himself in any other position which would subject him to conflicting duties, or expose him to the temptation of acting contrary to the best interests of his original *cestui que trust,* and this prohibition operates irrespective of the good faith or bad faith of such dealing.

[2] ID. — ANTAGONISTIC DUAL RELATIONS — REMOVAL OF TRUSTEE. — Where a trustee of certain corporate stock holds, in his own right, sufficient stock to control the corporation without the con-

---

1. See 25 Cal. Jur. 335; 26 R. C. L. 1281.

sent of the beneficiaries of the trust stock, his dual relations to the property of the corporation are antagonistic, and the court should sever them by removing him from the trusteeship and appointing some other person as trustee.

[3] ID. — CORPORATE OFFICER AS TRUSTEE — ACCEPTANCE OF SALARY — ANTAGONISTIC INTEREST—BAD FAITH.—Where said trustee accepts a salary as president of the corporation he places himself in a position whereby his personal interest may come directly in conflict with, and to a certain extent antagonistic to, his interest as trustee, and, in determining whether he ought to be permitted to act as trustee, it is not necessary to determine that he has acted in bad faith or received from the corporation a sum in excess of what he would have been legally entitled to if he had been selected as president of the corporation and had not held a part of the corporate stock in trust.

[4] ID.—MUTUAL ILL FEELING — ABSENCE OF MISCONDUCT — REMOVAL OF TRUSTEE—EQUITY.—The power of a court of equity to remove a trustee and substitute another in his place is incidental to its paramount duty to see that trusts are properly executed; and such power may properly be exercised whenever such a state of mutual ill feeling, growing out of his behavior, exists between the trustee and the beneficiary that the continuance of the trustee in office would be detrimental to the execution of the trust, even if for no other reason than that human infirmity would prevent the beneficiary from working in harmony with him, and although charges of misconduct against him are either not made out, or are greatly exaggerated.

[5] ID. — HOSTILITY BETWEEN TRUSTEE AND CESTUI QUE TRUST—DISCRETIONARY POWERS—REMOVAL OF TRUSTEE.—While hostility between the trustee and the *cestui que trust* is not of itself a sufficient ground for removal of the trustee, unless it appears that the action of the trustee is probably controlled or might be controlled by it, where a trustee is charged with an active trust, which gives him some discretionary power over the rights of the *cestui que trust*, and which brings him into constant personal intercourse with the latter, the mere existence of strong, mutual ill feeling between the parties will, under some circumstances, justify a change by the court.

[6] ID.—IMMATERIAL FINDINGS—ABSURD PREJUDICE.—In these actions to secure the removal of a trustee, although some of the findings of the trial court were immaterial and unnecessary to the decision, that fact was not prejudicial to defendant, where other findings showed that defendant voted plaintiffs' stock to his personal

---

4.   See 25 Cal. Jur. 329; 26 R. C. L. 1276.
5.   See 25 Cal. Jur. 329.

advantage in such matters as his election to the offices of president and general manager, the increase of his salary, the making of changes in the board of directors and in the by-laws of the corporation, all calculated to increase his power and control in the corporation, and that a very bitter antagonism existed between defendant and plaintiffs, which had gone so far as to be manifested in physical violence upon some occasions, and tended to make it impossible for defendant to impartially exercise his discretion in the matter of terminating the trust and in other matters involving the interests of the beneficiaries.

[7] ID.—APPEAL—ATTORNEY'S FEES.—In such actions, where defendant has been made substantial allowances to meet any obligation he may be under for the expense of the litigation, he may properly be refused any further allowance for attorney's fees for services rendered on his appeal from the judgment directing his removal as trustee.

---

(1) 38 Cyc., p. 296, n. 19, 20.    (2) 38 Cyc., p. 263, n. 70.    (3) 38 Cyc., p. 263, n. 70.    (4) 38 Cyc., p. 263, n. 72, p. 265, n. 84.    (5) 38 Cyc., p. 263, n. 72.    (6) 4 C. J., p. 1057, n. 85.    (7) 39 Cyc., p. 493, n. 10.

APPEAL from judgments of the Superior Court of Los Angeles County. Walton J. Wood, Judge. Affirmed.

The facts are stated in the opinion of the court.

Bordwell & Mathews and Odell S. McConnell for Appellant.

Joe Crail and Harold C. Morton for Respondent.

LANGDON, P. J.—Two companion cases are presented by this appeal, one an action by Lawrence V. Overell and the other by Robert E. Overell, against Arthur O. Overell, to have him removed as trustee under two certain declarations of trust. Under each declaration of trust 375 shares of the capital stock of the J. M. Overell Furniture Company, a corporation, is held in trust. The parties plaintiff are beneficiaries under the trust declarations. The parties plaintiff and the party defendant are brothers. Each declaration of trust is dated October 20, 1920, and made by the mother of the parties, Anna E. Overell, who appointed herself trustee thereunder and designated the defendant as her successor in the event of her death before the expiration of the trust.

Mrs. Overell died in 1923, since which time the defendant has acted as trustee under said declarations of trust.

Each trust declaration provides that the trustees shall hold the stock with full and complete voting power thereof, paying the entire net income to the beneficiary for a period of ten years, after which time the trust estate shall be transferred to the beneficiary discharged of any and all trusts; and in the event of the death of the beneficiary during the existence of the trust, then said trust property is to be transferred, discharged of any trusts, to his heirs at law.

All the stock of the Overell Furniture Company is owned by the Overell family. The defendant owns 509 shares and holds 750 shares in trust for the plaintiffs in these proceedings, and the remainder of the 2,500 shares is owned by other brothers.

The plaintiffs sought the removal of the defendant as trustee and the appointment of another trustee or the termination of the trust, it being contended that the defendant was not a fit and proper person to be trustee of the stock because his personal interests conflicted with his duties as trustee; that the actions of the defendant with relation to the management and voting of plaintiffs' stock were inimical to the best interests of plaintiffs, and that because of the personal antagonism existing between the defendant and the plaintiffs, defendant was not a proper person to act as trustee.

The trial court gave judgment removing Arthur O. Overell as trustee and appointing as trustee the nominee of the plaintiffs. Defendant appeals from this judgment and contends that the complaint does not state a cause of action for the removal of the trustee; that the findings do not support the judgment and that the evidence is insufficient to support the findings.

No demurrers were filed to the complaints and the following is a summary of their allegations: Both of the plaintiffs are employed in the business of the Overell Furniture Company. Robert E. Overell is credit manager and has been employed in the business for about eight years. Lawrence V. Overell has been employed in various capacities for about three years. The trustee, by reason of being such, has control of a majority of the stock of the corporation and, in addition, dominates and controls another brother, I. R. Over-

ell, so that he controls two-thirds of the stock of this corpo-
ration. He became trustee of the stock on January 8, 1923,
and at the first stockholders' meeting thereafter, in April,
1923, proceeded to cause the number of directors of the cor-
poration to be reduced from five to three, and changed the
by-laws of the corporation so as to permit their amendment
at any directors' meeting by a two-thirds vote of the direc-
tors. By reducing the number of directors, the defendant
eliminated Walter E. Overell from the board of directors.
Walter E. Overell had been on the board of directors for
several years, was familiar with the business, and the best
interests of the business and of the stock belonging to the
trust estate required the retention of Walter on the board
of directors. The defendant, having chosen a board of di-
rectors subject to his domination and having changed the
by-laws so they could be amended at any time by two-thirds
of this board, and having further adopted a resolution that
any person might hold two offices, proceeded to elect himself
president and general manager and become in full control
of the affairs of the corporation.

It is alleged that the income from the trust estate depends
entirely upon dividends declared upon the stock and that
the payment of the same rests entirely with the defendant;
that dividends have not been declared for the year 1922 nor
for the year 1923, although the earnings of the corporation
have been large; that the defendant had the power to in-
crease his salary as he saw fit; that the defendant proposed
to cause the capital stock of the Overell Furniture Company
to be increased to the extent of $100,000 and was about to
take the necessary steps to call a stockholders' meeting and
by proper legal action increase the stock to such extent, and
that by reason of being the trustee under the trust declara-
tion, he would have sufficient voting power to secure the
increase of stock; that there was no necessity for the in-
crease of the capital stock and that this step was being
taken despite the objections of the plaintiffs and for the
purpose of compelling them to raise large sums of money
to purchase the additional stock, or in the event of their
failure so to do, the defendant would purchase the addi-
tional stock, thereby permanently securing the control of
the corporation; that only by having the voting power of
the trust stock could the defendant increase the capital

stock; that plaintiffs would be unable to purchase sufficient of the new stock to retain their proportionate interests in the corporation; that defendant notified the plaintiffs that he proposed to remove the business of the corporation to a new building and refused to discuss the matter with plaintiffs; that this matter was of great importance to said corporation and therefore to the trust estate consisting of stock in said corporation and the stock of plaintiffs should be fairly and impartially represented in voting on this question; that defendant, for a period of two years, has taken a hostile, unpleasant, and insulting attitude toward plaintiffs, calling them vile names and stating to them that they were not entitled to any interest in the business nor any stock therein, and that defendant attempted to intimidate plaintiffs by telling them that if they were to take any steps to secure control of their stock he would discharge them from their positions; that by reason of the hostility and antagonisms existing between the parties, the defendant would not act for the best interests of the plaintiffs.

The trust declarations provide that the trust may be terminated at any time prior to the expiration of the ten-year period, in the discretion of the trustee. The complaints allege that by reason of the hostile feeling between the defendant and the plaintiffs, the defendant could not exercise a fair and impartial discretion in this matter of terminating the trust.

Appellant urges that the matters complained of are all within the legal rights of the defendant and will not constitute cause for his removal as trustee. We cannot agree with this position.

[1] In all matters connected with his trust a trustee is bound to act in the highest good faith toward his beneficiary and may not obtain any advantage therein over the latter by the slightest misrepresentation, concealment, threat, or adverse pressure of any kind. (Sec. 2228, Civ. Code.) As long as the confidential relation lasts the trustee or other fiduciary owes an undivided duty to his beneficiary, and cannot place himself in any other position which would subject him to conflicting duties, or expose him to the temptation of acting contrary to the best interests of his original *cestui que trust.* This prohibition operates irrespective of

the good faith or bad faith of such dealing. (3 Pomeroy Equity Jurisprudence, sec. 1077.)

[2] The case of *Gartside* v. *Gartside*, 113 Mo. 348 [20 S. W. 669], is one involving a trust of stock in a "family" corporation and presents many features similar to the case at bar. The defendant trustee was a brother of the complainants, having been appointed trustee under the will of their father. Part of the trust estate consisted of stock in a coal company. We quote from the decision: "Defendant is president and treasurer of the company, and he is enabled without the consent of plaintiffs, to control the election of the board of directors, as he, his mother, his sister that sides with him, and his brother own 4020 of the shares while plaintiffs own 1980. He pays the dividends on the stock to his sisters. . . . He refuses to give his sisters any information in regard to the business of the coal company. . . .

"We think also that the court erred in not removing defendant from the trust for these reasons: First, He occupies antagonistic relations to the coal company property. He owns stock as an individual, as trustee, he holds the stock of his sisters, and he controls the business of the company as its president. He is, indeed, the company, being in full and complete control of it. He elects himself president and treasurer and fixes and pays his own salary. . . . Defendant's attorneys make this distinction with great clearness between defendant's actions as an officer of the company and his contract as trustee and complain that plaintiffs cannot or will not see that distinction.

"The argument is that the beneficiaries have no right to inquire into defendant's management of the corporate property, and that, even if they had such right, it is evident 'they together represent too small a fraction of its stock to enable them to exercise control of the business and it is a sufficient answer to all their complaint and criticism that all that has been done represents the will of the majority of those interested in the company.' If that is true, then it is perfectly manifest that the stock of the complaining beneficiaries should be held by someone other than the defendant. This would operate as a slight check, at least, on his management of the company's affairs. The fact that he can control the company without the consent of complainants,

78 Cal. App.—17

instead of being a reason for permitting him to retain the title to their stock with the power to vote it, affords the strongest reason why he should surrender it to someone whose interests are not identical with his. His dual relations to this property are antagonistic, and the court should sever them by removing him from the trusteeship, and by the appointment of some other discreet business man, who, no doubt, will be able to find some legal method of inquiring into the management of the business of the company.''

[3] Many features of the instant case are considered in the foregoing quotation; another feature of the instant case is discussed in the case of *Pyle* v. *Pyle,* 137 App. Div. 573 [122 N. Y. Supp. 259], affirmed, 199 N. Y. 538 [92 N. E. 1099], as follows: ''By accepting a salary as president of the corporation, he has placed himself in a position whereby his personal interest may, or has, come directly in conflict with, and to a certain extent antagonistic to, his interest as trustee. It is not necessary to determine that he has acted in bad faith or received from the corporation a sum in excess of what he would have been legally entitled to if he had been selected as president of the corporation had he not been a trustee of an estate holding one-half of the capital stock. One-half of the salary paid to him diminishes to that extent what would otherwise be paid to the beneficiaries of the trust which he represents, and to this extent at least he is not in a position to so act that his personal interest does not come in conflict with his interest as trustee. He ought not to have placed himself in such position, and, having done so, ought not to be permitted to act as trustee.''

In *Matter of Hirsch's Estate,* 160 App. Div. 367, 376 [101 N. Y. Supp. 883, 889], it is said: ''It is not necessary to determine that the appellant acted in bad faith or received from the corporation a sum in excess of what he would have been legally entitled to had he been selected as president and counsel for the company by the stockholders owning stock in their own right. He placed himself in a position where his personal interest and the interest of the beneficiaries for whom he was trustee were to a certain extent antagonistic.''

[4] In *May* v. *May,* 167 U. S. 310 [42 L. Ed. 179, 17 Sup. Ct. Rep. 824], the court said: ''The power of a court of equity to remove a trustee, and substitute another in his

place, is incidental to its paramount duty to see that trusts
are properly executed; and may properly be exercised when-
ever such a state of mutual ill feeling, growing out of his
behavior, exists between the trustees, or between the trustee
in question and the beneficiaries, that his continuance in
office would be detrimental to the execution of the trust, even
if for no other reason than that human infirmity would pre-
vent the co-trustee or the beneficiaries from working in har-
mony with him, and although charges of misconduct against
him are either not made out, or are greatly exaggerated.
(Citing authorities.)''

[5]   Also, in *McPherson* v. *Cox,* 96 U. S. 404, 419 [24
L. Ed. 746], it is said: ''Where a trustee is charged with
an active trust, which gives him some discretionary power
over the rights of the *cestui que trust,* and which brings
him into constant personal intercourse with the latter, it
may be conceded that the mere existence of strong, mutual
ill feeling between the parties will, under some circum-
stances, justify a change by the court.''

In the instant case the trustee has discretionary power
over the termination of the trust, and the declaration of
dividends, which constitute the income from the estate.   The
trustee and beneficiaries are brought into constant personal
contact because of the employment by the same corporation.

We quote further from *Gartside* v. *Gartside, supra:* ''The
second reason why the defendant should be removed from
the trusteeship mentioned is the unfriendly and even hostile
relations that exist between him and the *cestui que trusts.*
Hostility between the trustee and the *cestui que trust* is not
of itself a sufficient ground of removal, unless it appears
that the action of the former is probably controlled or might
be controlled by it.   Some of the courts make a distinction
between hostility growing out of the trustee's fault, or partly
out of his fault, and that growing wholly out of the fault of
the *cestui que trust.*   Conceding that such distinction is
founded in reason, which is not clear to us, however, yet we
think that the evidence in this case shows conclusively that
defendant is not entirely without fault.

''In our opinion the hostility of these parties and the
situation and nature of the property and their relations to
it make the continuance of defendant as trustee incompat-
ible with the best interests of the beneficiaries and he should

be removed. This position is supported by authority, and, it seems to us, upon principle, too. Perry on Trusts, sec. 276, and cases cited.''

Cases announcing a principle in harmony with the foregoing authority are: *Maydwell* v. *Maydwell,* 135 Tenn. 1 [Ann. Cas. 1918B, 1043, 185 S. W. 712] ; *Wilson* v. *Wilson,* 145 Mass. 490, 493 [1 Am. St. Rep. 477, 14 N. E. 521] ; *Laughlin* v. *Wells Bldg. Co.,* 179 Wis. 56 [190 N. W. 899]. The case last cited answers the argument of appellant based upon the fact that the record shows that the beneficiaries of the trust have probably been as disagreeable and inconsiderate in their treatment of the trustee as he has been in his treatment of them, in the following language: ''We find, however, upon examining the evidence, that a state of serious antagonism has arisen between the trustee and the *cestuis que trustent.* Whether the trustee is more to be blamed for the existence of this antagonism than the *cestuis que trustent,* we need not determine. . . . While it is true that the mere fact that a quarrel exists between a *cestui que trust* and the trustee is not ground for the removal of the latter, yet such a fact, in connection with other facts and circumstances, may be taken into consideration in determining whether or not a trial court has abused its discretion in removing the trustee. In the case of a trust not coupled with any interest in the trustee, the welfare of the beneficiaries of the trust constitutes the chief matter for consideration.''

[6] The attack made by the appellant upon the findings is without merit. It is true that some of the findings are immaterial and unnecessary to the decision, but that fact does not prejudice the appellant. There are in the record findings sufficient to meet the rules of law enunciated in the decisions from which quotations have been made herein which are supported by the evidence. Defendant voted the stock of the beneficiaries to his personal alvantage in such matters as his election to the offices of president and general manager, and in increasing his salary and in making changes in the board of directors and in the by-laws of the corporation, all calculated to increase his power and control in the corporation. A very bitter antagonism exists between defendant and plaintiffs, which has gone so far as to be manifested in physical violence upon some occasions. Such conditions tend to make it impossible for the defendant to

impartially exercise his discretion in the matter of terminating the trust and in other matters involving the interests of the beneficiaries.

The contention that the findings do not support the judgment is answered by our discussion of the sufficiency of the complaints, as the findings embody, substantially, the allegations of the complaints.

[7]  The only other matter requiring consideration is the contention that the appellant should be allowed a reasonable sum for attorney's fees for services rendered on appeal, which sum is suggested as $2,500 in each of the two cases.  In exercising discretion in this matter we are impressed by the fact that the trial court has already allowed the trustee $2,500 in each case, or a total of $5,000, to meet any obligation he may be under for the expenses of this litigation.  In view of that fact we are inclined to take the position of the court in the case of *Laughlin* v. *Wells Bldg. Co.*, *supra*, wherein it was said: "The trial court allowed the plaintiff (the trustee) $1,500 for legal services in this case, allowed him for disbursements actually paid out as trustee, and allowed him to tax statutory disbursements made by him in this action.  In view of such allowance, we have reached the conclusion that the plaintiff (the trustee) should have no further allowances for costs, disbursements or counsel fees upon this appeal."

The judgments are affirmed.

Nourse, J., and Sturtevant, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 30, 1926.