536

[Civ. Nos. 691, 834. Fifth Dist. Feb. 27, 1968.]

Estate of KATHERINE G. MILLER, Deceased. MIRIAM MILLER HARTMAN, Plaintiff and Appellant, v. BURKE E. BURFORD, as Executor-Trustee, etc., et al., Defendants and Respondents.

(Consolidated Appeals.)

Hutchinson & Quattrin and J. Albert Hutchinson for Plaintiff and Appellant.

Hubler, Burford, Moran & Quirk, Burke E. Burford, Gaylord N. Hubler and John Moran for Defendants and Respondents.

CONLEY, P. J.—For the third time, this court has been called upon in these consolidated appeals to pass upon issues of the litigation in the above estate. Reference is made to the two earlier opinions in *Estate of Miller*, 212 Cal.App.2d 284 [27 Cal.Rptr. 909] and *Estate of Miller*, 230 Cal.App.2d 888 [41 Cal.Rptr. 410].

No move for a hearing by the Supreme Court was made in the first case; but, in the latter instance, application was made for a hearing in the Supreme Court, which was denied on January 20, 1965. Thereafter, in due course, the remittitur in each case was issued to the Tulare County Superior Court, where the appellant, Miriam Miller Hartman, acting in timely fashion, filed cost bills as to each, neither judgment of which has ever been completed by that court, or paid. Numerous additional proceedings, however, have since been carried on in the Tulare County Superior Court, both in connection with the probate estate and the trust, and appeals were taken by Mrs. Hartman as to various matters in both. Several of these appeals resulted in two of the numbered proceedings with which we are here concerned, 5 Civil Nos. 691 and 834, which, by stipulation, were consolidated; they involve appeals from the proceedings in the estate and in the trust. A third appeal,

numbered herein 5 Civil 753, which was argued in this court at the same time as 5 Civil Nos. 691 and 834, results from our own orders for costs on appeal in the two previous perfected appeals above referred to; it was never formally consolidated with the other two pending appeals and, consequently, a separate opinion will be filed relating to that particular question.

Obviously, we do not intend to repeat here any substantial part of the factual material contained in the two former opinions, and it is suggested that these opinions be examined by anyone desirous of understanding the complex factors that are dealt with in the present opinions.

The fundamental question in the background of the entire litigation is the distribution to the three Miller daughters of the substantial competence gathered through the years by their father and mother, principally through compensation for the professional services of Dr. Austin V. Miller, a general medical practitioner in the City of Porterville during his long years of private practice. His death resulted in the acquisition of the entire family property by his wife, Katherine G. Miller, who in the process of time made her will to dispose of the estate to their three children, Sally Miller Field, Miriam Miller Hartman, and Marcia Miller Nelson.

The opinion in the *Estate of Miller*, reported in 230 Cal. App.2d 888, 893 [41 Cal.Rptr. 410], contains the following: ". . . The family had been a close-knit and apparently loving family with particular ties of affection existing between the mother and father and each of the daughters. The Millers had educated their offspring and particularly favored the professional aspirations of Miriam by paying for her training as a Doctor of Medicine specializing in opthalmology. Unhappily, she had been recently troubled by what is termed a disease in the record, an habitual overindulgence in alcohol, temporarily at least, which seemed to put an end to any aspiration on her part to continue to be a skillful and successful medical practitioner. The situation eventually became so bad that she was formally deprived of her license to practice medicine. At that time her beloved mother made her will and the codicil attached to it, and it is quite simple in reading between the lines to see that, while the mother still loved her three daughters and desired to have all of them benefit by the joint accumulations of Dr. Miller and herself, she was acutely aware that Mrs. Hartman in her then condition could not unassisted safely and properly handle her share of the estate and that a trust should be created.

"It is equally obvious that the mother desired with all her heart that her three daughters should be well cared for and should have the benefits of the family accumulations which she was passing on. She gave outright one-third of her property to Mrs. Nelson and one-third to Mrs. Field, and set up a trust with her attorney, Mr. Burke E. Burford, for the remaining one-third."

Mrs. Miller had retained Burke E. Burford to draw her will; as attorney and client, a confidential relationship existed between them. He named himself in the draft of the will as executor and also as trustee for Mrs. Hartman and authorized the appointment of any lawyers (not excluding the law firm of which he was a member, Burford, Hubler & Burford) as his attorneys, and that both he and such lawyers should be entitled to receive fees for their work. This, of course, was contrary to the normal custom; it is permissible but unusual; it is frowned upon by courts as a situation leading to the possibility of a double payment for the same technical knowledge and services, the general practice being that if a member of a law firm accepts an executorship, his knowledge of legal requirements should permit him, for the fees awarded by statute and the extra pay for extraordinary services, to perform the work of an expert in legal technology for one fee, rather than for two. A distrust of this departure from the usual custom is probably present, at least subconsciously, in many of the objections filed by the appellant to numerous fee items.

Because of the diversity of the problems ruled upon below, the variety of the grounds of appeal, the lapse of time between hearings and the delay in filing transcripts caused by the fact that many of the essential papers had been removed with the consent of the clerk of Tulare County by Mr. Burford for use in allied litigation hereafter referred to in San Mateo County, the record presents grave difficulties in considering fully and accurately each of the objections that appellant has taken to various orders in the lower court. The conclusion is inescapable, however, that there must be reversals and new trials on many of the issues involved in these appeals.

Among the points most vigorously argued by appellant is the contention that the specific directions of this court set forth in the opinion on the second *Estate of Miller* appeal were not carried out by the Tulare County trial court, or by Mr. Burford as testamentary trustee. For convenience, we repeat the totality of these orders taken from pages 913-915 of the opinion in *Estate of Miller, supra,* 230 Cal.App.2d 888:

"The order relative to the trust must be reversed with directions to the trial judge to make additional findings of fact and conclusions of law from the evidence in this case and a new order based thereon incorporating the following:

"1) The court determines from the evidence that the trustee has inexcusably failed to exercise the discretion required of him, and that it is incumbent upon the court, accordingly, to make the following specific directive orders;

"2) That the intention of Mrs. Miller in creating the trust was to provide support and maintenance for Mrs. Hartman during her lifetime by the use of the net income from the trust property distributed to the trustee and, if that should be insufficient, by the invasion of the corpus of the trust property, in an amount which, when added to any other income which she might have, should be sufficient for her adequate and proper support and maintenance from and after the date of the death of Mrs. Miller;

"3) That the intention of Mrs. Miller with respect to the standard of suport and maintenance of Mrs. Hartman was that she should live in the same manner and style as the Miller family and the Hartman family had lived prior to the death of Mrs. Miller;

"4) That such standard of support and maintenance when applied to the uncontradicted facts established by the record should include the payment of any debts of Mrs. Hartman for taxes due to the United States and to the State of California, all attorney's fees and costs incurred for the purpose of ascertaining such tax debts and for restoring Mrs. Hartman to the right to practice her profession as a physician in the State of California; the N. Gray & Co. balance; and the equipment of Mrs. Hartman with the usual mechanical and scientific precision instruments used by ophthalmologists in the practice of their profession;

"5) That the trustee forthwith determine the amount of the net income now held in the trust which has been accumulated from the corpus of the property in the trust since the death of Mrs. Miller and shall pay forthwith to Mrs. Hartman the following sums:

"A) A sum sufficient to total the monies which would have been required for the support and maintenance of Mrs. Hartman in accordance with said standard from the death of Mrs. Miller to and including the date of hearing of the petition of Mrs. Hartman, to wit: the 19th day of July, 1963;

"B) The payment of the debts of Mrs. Hartman as shown

by the evidence, to wit: 1) the balance due N. Gray & Co. for the funeral of Mrs. Hartman's deceased husband; 2) the monies necessary to pay the attorney's fees as shown by the evidence; 3) the monies sufficient to pay any outstanding tax due to the United States of America and to the State of California;

"C) A sum sufficient to purchase the usual mechanical and scientific instruments used by ophthalmologists in the practice of their profession.

"6) The trustee shall forthwith ascertain the net income from the trust property from the said 19th day of July, 1963, for a period of one year thereafter, and shall forthwith pay to Mrs. Hartman whatever sums, when added to any income from other sources received by Mrs. Hartman during that time, would equal proper support and maintenance in accordance with said standard during that time;

"7) That the trustee shall forthwith estimate the probable income from said trust property for the period beginning July 19, 1964, and ending one year thereafter, and shall pay to Mrs. Hartman monthly such sums as, when added to her other income, if any, will equal her support and maintenance according to the standard mentioned above;

"8) That during the life of Mrs. Hartman the trustee shall continue to make such calculations at least annually and shall promptly thereafter make such monthly payments to Mrs. Hartman;

"9) That the support and maintenance of Mrs. Hartman during prospective payments shall include monies sufficient to permit her to operate an office for the practice of her profession as an ophthalmologist;

"10) In making the payments in accordance with this order, the trustee shall credit himself with any payments which he has made to Mrs. Hartman previously;

"11) If at any time the net income from the property in the trust shall not be sufficient to make the payments provided for by paragraphs 1 to 9 as heretofore set forth, the trustee shall invade the corpus of the trust property for the purpose of making or completing such payments."

It should scarcely be necessary to emphasize that these were orders and directions of this court, that no hearing was granted by the Supreme Court as to any part of them, and that it was the duty of Mr. Burford, as trustee, and of the trial judge to follow without delay these specific directions in proceedings that followed. In more than one instance, they

inexcusably failed to do so. And it is still required that they comply as to any and all of said requirements.

By paragraphs numbered 2, 3, and 4, above quoted, the lower court was directed to ascertain the standard of support and maintenance which should be applied to the payment of Mrs. Hartman, and to pay taxes due to the United States and the State of California, attorneys' fees to her own counsel for the purpose of ascertaining tax debts and restoring Mrs. Hartman's medical license and to settle the balance due for the burial of Mr. Hartman, and the purchase of equipment normally used by ophthalmologists. Complying with only a part of these requirements, Mr. Burford paid the taxes and the balance of the funeral bill, but nothing has been paid to the attorneys for Mrs. Hartman as directed, and scientific equipment for the purpose of carrying on her profession was originally rented, rather than purchased; later, the provision for the acquisition of these medical instruments was amended so that a lease contract, which ultimately would result in a transfer of ownership to Mrs. Hartman, was entered into; but the order of this court, quoted above, required the purchase of these instruments and in accordance, therefore, the trial court must now order their outright purchase. Upon the going down of the remittitur herein, the court should ascertain the professional charges of counsel for appellant in the specific particulars directed by this court and heretofore quoted. While we do not direct that the professional charges of Hutchinson & Quattrin must necessarily be paid in full according to their view of what is proper, the amount tendered to Hutchinson & Quattrin should be a reasonable amount, and may or may not be coincidental with what they may think proper. They should also be paid their traveling expenses in connection with their representation of the appellant at the proceedings mentioned. And a later part of this opinion concerns itself with other fees due to appellant's attorneys.

■ As we have seen, the directive contained in the opinion required that the trustee should ''pay forthwith to Mrs. Hartman'' a sum sufficient to total the monies which would have been required for her support in accordance with such standard of living from the death of her mother. The trial court has made inquiry as to the standard of living of the Miller and Hartman families and has arrived at the conclusion that it amounted to $14,000 per year. Provision was made by the court for the period after Mrs. Hartman should resign

her medical position with the Kaiser organization and begin practice in her own office to the effect that she should be paid from the trust at the rate of $14,000 per year, deducting, however, any sums which she might earn for that particular period, and it is further provided by order of the trial court that the trustee shall be granted credit for any sums which he has heretofore paid on that account. The order of this court meant just what it said; she has not been paid at that rate from the period of the death of her mother. The court should now make provision for the payment of said sums for said total period, with specified deductions accordingly. It seems proper, also, that interest at the rate of 4 percent per annum should be paid on the installments that were omitted for the period of the omission (Prob. Code, § 162), and it is so ordered.

One of the sore points between the litigants is whether the trial court was correct throughout the litigation in directing that Mr. Burford, as executor of the estate of Katherine G. Miller, should oppose the attempt made by Mrs. Hartman, by her action instituted in San Mateo County (*Hartman* v. *Burford,* 242 Cal.App.2d 268 [51 Cal.Rptr. 309], San Mateo No. 95677), to establish that her parents bound themselves by contract to leave the family property each to the other marital partner upon death and that it would then be left by subsequent will of the survivor in three equal parts to the three daughters of the contracting parties. It should not be forgotten throughout that the San Mateo litigation was initiated by Mrs. Hartman, and that the end result of that fiercely fought contest was that the jury, the trial judge, and the Court of Appeal of the First Appellate District decided that Mrs. Hartman was not entitled to recover in that suit and that the Supreme Court thereafter denied her petition for hearing. Mrs. Hartman started the San Mateo County fight, and she was found to be wrong in that comprehensive employment of the juridical machinery of the state. This result conformed with the viewpoint that Mrs. Miller correctly assumed the right to dispose of the family fortune, giving one-third to each of two daughters, and transferring the other one-third to Mr. Burford in trust for Mrs. Hartman. The San Mateo case was instituted after the filing of the Miller estate probate proceedings in Tulare County, and it essentially constituted an impact between the theory that the will correctly specified the rights of the Miller daughters and that the rights of the three daughters were defined by the alleged contract between their parents.

It is unquestionably true that, generally speaking, an executor or administrator of an estate should remain neutral in the estate proceedings as between parties such as heirs and devisees with conflicting claims to portions of the estate. In such circumstances, the administrator or executor should not act in favor of one group or the other. (See *Estate of Lynn,* 109 Cal.App.2d 468, 473 [240 P.2d 1001]; 21 Cal.Jur.2d, Executors and Administrators, § 667, p. 25.) It is this principle which Mrs. Hartman advocates throughout the litigation as rendering erroneous the direction of the Tulare County court authorizing Mr. Burford to oppose the San Mateo suit. However, this is hardly the factual situation presented in the instant case. Here, the question at issue was whether the will of Mrs. Miller was paramount, or whether it never had any validity, insofar at least as Mrs. Hartman was concerned, by reason of an alleged preexisting contract between her parents. The factors involved presented a legitimate ground for the trial court, as it did here, to direct Mr. Burford to resist the attempt to wipe out the will and the probate proceedings. That is what the court did from the beginning of the San Mateo case and such early orders were approved and affirmed on appeal in the two previous cases before this court. It seems to us, therefore, that it was legitimate for the Tulare County court to continue its repetitive directions to Mr. Burford to uphold the legitimacy of the will and to resist the attempt to destroy the Tulare County probate proceedings by the San Mateo litigation. The court, among other things, gave Mr. Burford leave to secure the services of additional trial attorneys in San Mateo County to fight the lawsuit there, if he were so advised. This Mr. Burford did, and the expenses of this fight are upheld insofar as paying the San Mateo firm of attorneys for their professional services and the expenses of that litigation. In addition, a fee for services was awarded by the court to Mr. Burford in connection with the San Mateo case; this amount awarded to Mr. Burford and a further allowance to his own Tulare County legal firm are not approved hereby but are further discussed at a later point of the opinion.

During one of the previous appeals (*Estate of Miller, supra,* 230 Cal.App.2d 888), this court was informed by counsel that there existed the possibility of a dismissal of Mr. Burford, as executor, in the San Mateo case, and this court ordered that if such a dismissal were to take place no further payment of costs or fees should be made by the estate on

behalf of the executor in the San Mateo litigation. There was no dismissal. The evidence in the instant proceeding shows that the trial court in San Mateo County specifically ordered that no such dismissal should occur. Appellant herein says that Mr. Burford and his attorneys opposed such a dismissal, and Mr. Burford concedes it. We will not hold that the payments made by Mr. Burford to the San Mateo attorneys on that specific case or the expenditures for costs of suit in that action should not be made.

Mr. Burford and his firm and the San Mateo lawyers hired by him are not entitled to any fees from the estate or the trust for the other San Mateo case, which involved his defense of the petition for his removal as trustee.

The two former opinions in this case, already referred to, contain extensive criticisms, impliedly, of the actions of Mr. Burford in connection with his administration of the office of executor and the office of trustee. This opinion picks up where the former opinions left off and shows that while Mr. Burford possesses technical excellence as an attorney he did not, in proper fashion, represent the interests of Mrs. Hartman. The viewpoint of an independent court to the same effect is shown by the "decision" filed by the Honorable Frank W. Rose, Judge of the Superior Court in San Mateo County in the case of Hartman v. Burford (San Mateo No. 105610), the action brought by Mrs. Hartman to remove Mr. Burford as trustee, where he says:

"Plaintiff's case here is essentially based upon the trustee's conduct as found and described in the opinions in *Estate of Miller*, 212 C.A.2nd 284 [27 Cal.Rptr. 909], and *Estate of Miller*, 230 C.A.2nd 888 [41 Cal.Rptr. 410], together with defendant's inexcusable delay or complete failure to act thereafter in consonance with their holdings, or otherwise in furtherance of the trust. These contentions are sustained by the evidence, as exemplified in defendant's own Exhibit B, correspondence between the parties between June 15 and August 21, 1963.

"Defendant's demeanor and conduct toward plaintiff was cold, aloof and defensive. Defendant testified that he bore no hostility to plaintiff. The Court accepts this as true, but cannot avoid observing that a highly antagonistic atmosphere has pervaded all communications and contacts between counsel for the parties.

"The court finds that a problem exists, not in the realm of motivation, but in the temperamental suitability of defendant

to perform his role in this case as trustee. During the entire five year period since the death of plaintiff's mother, defendant presents a general picture of unwillingness to act except upon order of court; of applying for authorizations in favor of plaintiff only under compulsion. There has been an unrelieved and inexcusable want of diligence to proceed toward assumption of responsibility in performance of the clear mandate of the trust, even after it was judicially determined for him by the efforts of plaintiff. Defendant's conduct evidences a paramount concern for his own protection as against actively determining and serving the proper needs of the prime beneficiary. He seems to have been preoccupied with:

''1) the fact that the beneficiary sought to avoid the trust limitation upon what apparently would have been her full share; and

''2) excessive concern for the possible rights of the contingent beneficiaries of the trust.

''These attitudes are not warranted by the obvious intent of the will as interpreted by the court in *Estate of Miller,* 230 C.A.2nd 888, at 909-910 [41 Cal.Rptr. 410].

''Defendant's purported effort to respond to the specific instructions set forth in *Estate of Miller,* 230 C.A.2nd 888, 913-915 [41 Cal.Rptr. 410], as seen in the evidence, shows an almost incredible want of capacity to render effective service to his trust.

''The entire record compels the conclusion that, although not expressed, the atmosphere of hostility engendered by defendant's inexcusable delay and refusal to act seriously impairs the proper administration of the trust. The result has been needless deprivation and hardship to plaintiff.

''Defendant's indicated inability to improve his service as trustee, except under great compulsion, requires his removal. See *Estate of Gilmaker,* 57 C.2d 627, 632-633 [21 Cal.Rptr. 585, 371 P.2d 321]. C.C. 2283.''

In view of these facts, it seems to us that it is presumptuous for Mr. Burford to assume that he should be paid from the trust estate for his efforts in attempting to remain in charge of that property. There is no substantial evidence that would justify an award of attorney fees in connection with Mr. Burford's resistance of the justified efforts to remove him. As is said in 2 Scott on Trusts (Second Edition) section 188.6, at page 1405:

''. . . where litigation results from the fault of the trustee

he is not entitled to charge the expenses of the litigation against the trust estate.''

In *Estate of McLellan,* 14 Cal.App.2d 271, 274 [57 P.2d 1338], it is held that the fees of an attorney whose services in trust transactions were for a trustee and were detrimental to the trust itself are not chargeable to the trust.

It is not reasonable, under the circumstances, to pay Mr. Burford as trustee or as attorney for himself in connection with his resistance of an entirely proper application to remove him. (Civ. Code § 2274.) (See also: *Estate of Vokal,* 121 Cal. App.2d 252, 260 [263 P.2d 64]; *Estate of Scherer,* 58 Cal. App.2d 133, 139 [136 P.2d 103]; *Estate of Parker,* 200 Cal. 132, 135 [251 P. 907, 49 A.L.R. 1025]; *Metzenbaum* v. *Metzenbaum,* 115 Cal.App.2d 395, 401 [252 P.2d 31, 966]; *In re Drake,* 195 Minn. 464 [263 N.W. 439, 101 A.L.R. 801, 805].)

In the *Estate of Gilmaker,* 226 Cal.App.2d 658, 662-663 [38 Cal.Rptr. 270], it is said: ''. . . the Supreme Court determined that the trustee had failed in the performance of its duties as delineated in the pertinent provisions of the trust and that the hostility between the trustee and the beneficiary had so impaired the proper administration of the trust as to require the removal of the trustee and the substitution of a new trustee. (*Estate of Gilmaker, supra,* 57 Cal.2d 627.) It has thus been conclusively established that the trustee erred in its administration of the estate and that it had no sound basis for its resistance to the beneficiary's petition for its removal. In the light of that determination, the trustee was not entitled to receive out of the trust estate its expenses of litigation, including attorneys' fees, incurred in defending its untenable and partisan position. (See *Moore* v. *Bowes,* 8 Cal. 2d 162, 166-167 [64 P.2d 423]; Note, 9 A.L.R.2d 1132, 1219; Loring, A Trustee's Handbook (6th ed. 1962) § 65, p. 175, Bogert on Trusts (2d ed.) § 525, p. 344; Nossaman, Trust Administration and Taxation (2d ed. 1963) § 32.07, p. 620.)

''The reasoning just expressed is not affected by the trial court's finding that the trustee acted reasonably and in good faith in its litigation with the beneficiary. It cannot be said that it is the exercise of a reasonable judgment to assert or defend a position for which no reasonable support can be found in the trust provisions and the governing law.''

In *Moore* v. *Bowes,* 8 Cal.2d 162, 166-167 [64 P.2d 423], it is said: ''Counsel for the appellants also in the trial court represented the defendant Garland, whom the court found had not violated any of his duties as trustee. They were

awarded $2,000 for their services in the trial court as counsel for the defendant Garland. It is contended that they are also entitled to fees for defending the trustees who were removed, including an appropriate fee for their services performed on the appeal. The facts found and the action thereon of the trial court in the removal of the defendants Bowes as trustees was sufficient ground for the refusal to allow them costs or attorney fees payable out of the trust fund. (§ 1026, Code Civ. Proc.; see *Overell* v. *Overell, supra,* at p. 261 [78 Cal.App. 251 (248 P. 310)].) For similar reasons they are not entitled to have their counsel fees incurred on the appeal paid out of the trust funds.

"An allowance to the plaintiffs for counsel fees to be paid out of the trust was proper. (*Mitau* v. *Roddan,* 149 Cal. 1 [84 P. 145, 6 L.R.A. N.S. 275] ; *Trustees* v. *Greenough,* 105 U.S. 527 [26 L.Ed. 1157].)"

In *Overell* v. *Overell,* 78 Cal.App. 251, 261 [248 P. 310], it is said : "The only other matter requiring consideration is the contention that the appellant should be allowed a reasonable sum for attorney's fees for services rendered on appeal, which sum is suggested as $2,500 in each of the two cases. In exercising discretion in this matter we are impressed by the fact that the trial court has already allowed the trustee $2,500 in each case, or a total of $5,000, to meet any obligation he may be under for the expenses of this litigation. In view of that fact we are inclined to take the position of the court in the case of *Laughlin* v. *Wells Bldg. Co., supra,* 179 Wis. 56 [190 N.W. 899] wherein it was said : 'The trial court allowed the plaintiff (the trustee) $1,500 for legal services in this case, allowed him for disbursements actually paid out as trustee, and allowed him to tax statutory disbursements made by him in this action. In view of such allowance, we have reached the conclusion that the plaintiff (the trustee) should have no further allowances for costs, disbursements or counsel fees upon this appeal.' "

Bitter complaint is made by the appellant that the trial court did not properly require the executor to sustain the burden of proving the validity of the entries in his accounts, inasmuch as they were formally questioned by the objector, Mrs. Hartman. When a personal representative files an account, it is properly made under oath, and, generally speaking, if the account is not questioned this is sufficient proof of the verity of the entries. However, if in form the entries are properly denied, the burden of proof actually falls upon the person whose accounts are submitted; in this instance, it

became the duty of the executor to adduce evidence to support the accounts filed by him; generally speaking, this was what the executor, and later the trustee, failed to do. For example, his multiple claims for extraordinary fees for himself and for his law firm are singularly without evidentiary support in the record by his own or any other testimony in the case. His duty, therefore, in this respect was not fulfilled and the objections made by Mrs. Hartman's counsel on that ground are good. In the circumstances, the fees allotted to Mr. Burford, as executor, as trustee, and as a member of his legal partnership, seem extraordinarily large and there is an obvious need for supporting testimony as to what he did in the circumstances.

The documents on file in the appeals indicate that on the records before the court Mr. Burford has been awarded by the Tulare County Superior Court, as executor and trustee, fees of $18,849.44 in the estate and $13,371.43 in the trust, or a total of $32,220.87. These figures include the fees allowed Mr. Burford in connection with the two opinions already on file which have become final and which have been paid, in addition to all of the items in the accounts which are now under appeal. His own firm of lawyers, at the same time, has requested and been allowed by the lower court for services in the estate and trust the following sums $23,459.44 in the estate and $11,391.43 in the trust, or a total of $34,850.87. Addition of the total items above listed show that the monies actually approved in the two opinions heretofore filed, together with the monies approved by the trial court in connection with the present appeals, amount to the total sum of $67,071.74. This total seems on cool observation to be shocking.

In addition to the foregoing, the trustee has asked for the approval of at least $3,210 for the San Mateo attorneys in the contract case, and Mr. Burford now asks for the payment to them of some $2,640 in connection with the suit to remove him as trustee. It will be necessary to reverse all allowances for executor's, trustee's, and attorneys' fees involved in the present appeals and to order retrials as to such fees, except as hereinafter noted.

▮ Complaint is made by the appellant that taxes in the amount of some $530 were paid by the executor to the federal government unnecessarily after actual distribution of part of the estate's assets to the two daughters and heirs of Mrs. Miller and to Mr. Burford as trustee. With regard to these tax payments, it would seem that Mr. Burford acted in good

faith and that he believes with justification that such sums were due to the federal government on the theory that they were income derived by the estate. We feel that the court's approval of this tax payment should not be interfered with by us.

In connection with the directions to the executor to pay the expenses of the defense of the San Mateo litigation, the court in connection with the so-called decree of final distribution authorized and directed the executor to retain the sum of $20,000 for the purpose of paying any tax deficiency which might be demonstrated and other possible claims, but principally directed toward the ultimate paying of claims that might arise by reason of the defense of the San Mateo County contract litigation. This device is approved under the circumstances shown by the record.

The accounts are in error further by reason of the failure of the trial court in case 5 Civil No. 753 to name properly the respondents responsible for costs on appeal in the two prior appeals referred to herein. The present appeal involving those questions is treated separately in an opinion of this court (see *post,* page 554 [66 Cal.Rptr. 768]), and it will not be necessary to cover explicitly, and in detail, the subject matter thereof in this opinion.

By reason of the improper rulings of the trial court and its failure to take care of the situation adequately, the accounts in the present consolidated appeals are erroneous through the allowance to Mr. Burford and his legal firm of a total of some $700 for misleading activities before the trial court, which resulted in erroneous rulings by the court. In connection with the present appeal relative to the second trustee account, the allowance of those items, $250 and $450, must be disallowed on a retrial of the proceedings.

Unless otherwise directed in the San Mateo case, each of the parties to the action to remove the trustee shall pay his or her own costs.

We have not so far discussed attorneys' fees which may be due to counsel for Mrs. Hartman in this litigation except the fees which were ordered paid in the two previous opinions in this estate matter. In addition to those fees, provision for the payment of which has already been made in this opinion, there are fees due to appellant's counsel for services rendered in this litigation in Tulare County, together with legal expenses which should be paid by Mrs. Hartman, based on the reasonable value of legal services so rendered. As, in connec-

tion with attorneys' fees heretofore discussed as payable to appellant's counsel, this court has no jurisdiction to require such counsel to accept the fees fixed. The purpose of this inquiry below is to ascertain what sum or sums the trial court thinks it proper to authorize the plaintiff to require from the trustee with which to pay such fees. If the court ascertains what are reasonable fees in the circumstances, the court may require the trustee to pay such sums to Mrs. Hartman and her counsel.

The order approving the supplemental report and account of the executor, after final distribution, and petition for allowance of commissions and fees for extraordinary services and petition for instructions is reversed, except that it is affirmed in the following specified particulars:

The award of extraordinary fees of $3,170 to the executor and $5,780 to the attorneys is reversed and is to be retried, except that the additional award to the firm of Carr, McClelland, Ingersoll, Thompson & Hora for participation in the San Mateo suit for specific performance of the alleged oral agreement (*Hartman* v. *Burford,* 242 Cal.App.2d 268 [51 Cal. Rptr. 309]) in the amount of $1,500 out of the reserve fund is affirmed; the direction as to costs on appeal in the Tulare County proceedings is reversed and any credit for costs advanced by Mr. Burford, as executor or trustee, for copies of transcripts on appeal in said proceedings should be disallowed and the trial court ordered to proceed as directed in the opinion of this court (*post,* p. 554 [66 Cal.Rptr. 768]); the approval of the executor's payment of income taxes is affirmed; the direction as to the reverse fund is approved as discussed hereinbefore.

The order approving the amended first account and report of the testamentary trustee and the petition for allowances and for instructions is reversed except as hereinafter ordered:

the directions contained in the body of the opinion are ordered to be observed by the trustee;

the order with regard to costs on appeal in connection with the two former opinions is reversed, and the trial court is ordered to proceed as directed in the opinion of this court following the present opinion (see *post,* p. 554 [66 Cal.Rptr. 768]);

the award of fees of $6,720 to the trustee and $8,780 to the attorneys for the trustee is reversed and the questions involved therein are to be retried;

that part of the order as to the personal needs of Mrs. Hartman is reversed and it is directed that she is entitled

from the date of the death of Mrs. Miller to income at the rate of $14,000 per annum with deductions made for prior payments to her and for other actual income received by her annually, and it is required that she be paid accordingly and that the trustee pay the beneficiary 4 percent per annum interest on the above net annual payments divided into 12 equal monthly amounts from the date of death of Mrs. Miller; future current support payments shall be paid monthly; that part of the order concerning the leasing of office space and leasehold improvements is approved; that part of the order allowing $1,750 for nonmedical furnishings was modified in the second order to the sum of $2,500 and as so modified is affirmed; that part of the order approving a lease agreement for medical equipment is reversed and the trustee is directed to arrange purchase of equipment as directed in the prior opinion; the award of salary for receptionist-assistant is affirmed; the direction to pay utilities for the office of the appellant is affirmed, as is the lease of an automobile; the direction to pay Mrs. Hartman's attorneys' fees is reversed in that payment shall be made upon a reasonable showing; the direction to the trustee to use monies on hand and to invade the corpus of the trust where necessary to comply with such orders is affirmed; that part of the order directing Mrs. Hartman to pay income taxes arising from her practice is approved as is the direction refusing the expenditure for Dr. Hartman's European trip.

The order approving the second account and report of the testamentary trustee and petition for instructions and modifying prior order is reversed in part and affirmed in part as follows:

The approval of the trustee and attorneys' fees is reversed and the amounts awarded are to be retried except that fees of $700 awarded to the trustee (i.e. to the trustee $450 and to the attorneys $250) on the hearing relative to the allocation of appeal costs are stricken and not allowed, and the fees shown by the account to the trustee of $2,350 and the fees to the firm of Carr and associates, attorneys, in the sum of $2,640, payable in the suit to remove the trustee, are not to be allowed; the approval of lease of medical equipment is reversed and the trustee is directed to purchase such equipment outright for Mrs. Hartman; the direction to pay any and all office overhead expenses is affirmed; payment for the personal upkeep of Mrs. Hartman is ordered as heretofore discussed; periodical reports of Mrs. Hartman to the court as

ordered is affirmed. The matter of surcharges repeatedly urged by appellant's counsel must depend, in large part, upon the findings made at the retrial.

The appellant shall recover her costs of appeal.

Gargano, J., concurred.

Stone, J., being disqualified, did not participate.

A petition for a rehearing was denied March 26, 1968, and the opinion was modified to read as printed above. Stone, J., did not participate therein. The petition of respondent Burford for a hearing by the Supreme Court was denied May 15, 1968.