[S. F. No. 18750.   In Bank.   Oct. 15, 1954.]

Estate of DORSEY E. McLAUGHLIN, Deceased. MARIAN
McLAUGHLIN SEYMOUR, Appellant, v. CATHERINE
McLAUGHLIN et al., as Trustees, etc., Respondents.

464

Martin Minney, Jr., Michael J. Cullen, Heller, Ehrman, White & McAuliffe, J. Arthur Leve and Leve, Hecht, Hadfield & McAlpin for Appellant.

Cooley, Crowley & Gaither and H. Mitchell Bourquin for Respondents.

A. Crawford Greene, John W. Parker, Brent M. Abel, E. M. Mannon and McCutchen, Thomas, Matthew, Griffiths & Greene as Amici Curiae on behalf of Respondents.

EDMONDS, J.—Marian McLaughlin Seymour, a beneficiary of a trust established by the will of her father, D. E. McLaughlin, has appealed from an order settling the sixth account and report of the trustees. Her principal objection is to the amount allowed the trustees as fees for their services.

The testator named as trustees his widow, Catherine, and two close business associates. The nominees other than Catherine resigned their appointments in favor of George E. Honn and Eva M. Wales, who also had been connected with the business of the trustor.

There were distributed to the trustees assets having a net worth of approximately $2,165,000. When the present proceeding was commenced, the trust corpus was valued on the

books of the trust at more than $100,000 above that amount. The trustees estimated its true worth as being in excess of $4,000,000.

Marian filed written objections to the account, excepting to each item. At the hearing upon her objections, the principal evidence was the testimony of trustees Honn and Wales explaining the items of the account. Marian did not testify and produced no witnesses, although she presented a document purporting to show the fees allowed to the trustees in comparable estates.

The trial court found that all of the statements set forth in the account are true and correct, and that all of the acts of the trustees, except as to a minor item of expense, were for the best interests of the trust. It also approved the amounts asked by the trustees as reasonable fees for both ordinary and extraordinary services.

Upon Marian's appeal from the order approving the account, her main contention is that the fees allowed the trustees are so great as to constitute an abuse of the trial court's discretion. She also argues that certain administrative expenses claimed by them were unnecessary. Another point is that the court erred in failing to apportion the trustees' fees according to the services performed by each of them. Finally, she contends, the trustees violated their fiduciary duties by failing to disclose conflicting interests and the payment to them of salaries from the corporations owned or controlled by the trust.

Pursuant to section 1122 of the Probate Code,* the trustees must be allowed "such compensation for services as the court may deem just and reasonable." That allowance rests in the sound discretion of the trial court, whose ruling will not be disturbed on appeal in the absence of a manifest showing of abuse. (*Estate of McLellan,* 8 Cal.2d 49, 55 [63 P.2d 1120]; *Estate of Mills,* 119 Cal.App.2d 8, 9 [258 P.2d 1028]; *Estate of Willardson,* 101 Cal.App.2d 777, 780 [226 P.2d 369].) The trustee must present to the trial court satisfactory evidence of the accuracy and propriety of the items in his account (*Purdy* v. *Johnson,*

---

*"On the settlement of each such account the court shall allow the trustee his proper expenses and such compensation for services as the court may deem just and reasonable. Where there are several trustees it shall apportion the compensation among them according to the respective services rendered. It may, in its discretion, fix a yearly compensation for the trustee or trustees, to continue as long as the court may deem proper."

174 Cal. 521, 527 [163 P. 893]; *Estate of McCabe,* 98 Cal.App. 2d 503, 505 [220 P.2d 614]); but the sole question before an appellate court when the fee allowed him is attacked as excessive is whether there is substantial evidence to support the trial court's finding. (*Estate of Griffith,* 97 Cal.App.2d 651, 655 [218 P.2d 149].) ▆ A finding that such a fee is a reasonable one states the ultimate fact in issue and is formally sufficient. (*Estate of Janes,* 18 Cal.2d 512, 514 [116 P.2d 438]; *cf. Estate of Willardson, supra,* 101 Cal. App.2d at 780; *Estate of Scherer,* 58 Cal.App.2d 133, 138-139 [136 P.2d 103].) ˍ

The evidence viewed in the light most favorable to the respondents, with all conflicts disregarded and all intendments and all reasonable inferences indulged in favor of sustaining the trier of fact (*Berniker* v. *Berniker,* 30 Cal.2d 439, 444 [182 P.2d 557]; *Light* v. *Cagle,* 125 Cal.App.2d 734, 737 [270 P.2d 900]), shows a trust whose corpus requires the exercise of exceptional business judgment in its management. Stocks and bonds, at the end of the accounting period had a value of $1,730,000. They yielded $75,880 during the year. The stocks were priced daily by the trustees during the early part of the year and weekly thereafter. The trustees conducted these activities without investment counsel, although they sought advice informally from several brokers, without charge to the trust. A watching account was maintained with a brokerage firm, and another firm made a year-end review of the investments. Sales of securities resulted in a capital gain of about $3,600.

Aside from the stocks and bonds, the assets of the trust consist of interests in properties whose values to a considerable extent are highly speculative. They include the stock of corporations owning gold mining claims, tidelands in the Long Beach Harbor area and submerged land in San Francisco Bay. The trust owns other mining claims from which more than a million dollars may be realized if an option to purchase them is exercised. Vacant lots owned by the trust were sold at a capital gain of almost $100,000.

▆ A substantial portion of Marian's brief is devoted to criticisms of the manner in which various assets of the estate have been managed by the trustees. Whether the trustees acted for the best interests of the trust in these matters was a question of fact for the trial court. (*Cf. Estate of McLellan,* 14 Cal.App.2d 271, 274 [57 P.2d 1338].) Many of

the transactions were approved by the court before they were made and several had the written approval of the beneficiaries.

Furthermore, the trustees testified at length concerning the problems confronting them and their reasons for acting as they did. The trial court was entitled to find in accordance with that testimony.

Another contention is that many of the activities claimed by the trustees to be extraordinary services are too speculative in value to merit compensation. Although she acknowledges that the negotiations made by the trustees during the accounting period with regard to some of the properties resulted in a substantial benefit to the trust during the ensuing year, she asserts that compensation for those activities should be deferred until the period in which the sale is completed. To allow them before that time, she argues, is to pay for services without regard to their value to the trust.

No California case decides this question. *Estate of Griffith, supra,* relied upon by Marian, holds only that prior accounts in which a trustee has claimed compensation for ordinary services do not bar a later claim for extraordinary services performed during the same period. (97 Cal.App.2d 651, 654.) Section 1122 of the Probate Code states that the court must allow the trustee compensation for his services "[o]n the settlement of each . . . account." No good reason appears why the trial court may not allow compensation for such negotiations despite the fact that their results may not be realized by the trust until a later date. Certainly, such efforts constitute services to the trust.

With regard to the amount which the trial court may allow as compensation, Marian has produced evidence as to the amount of trustees' fees awarded in assertedly comparable estates, which she states this court may judicially notice, and a compilation of the statutory and customary fees awarded to trustees in other jurisdictions. According to these schedules, she concludes, the maximum allowable fees for ordinary services is generally between 3 per cent and 10 per cent of gross income, with an additional maximum award of 5 per cent of gross income for extraordinary services.

However, the authorities relied upon by her hold that the income of a trust is only one of many factors to be considered in determining the fees allowable to a trustee. As stated in *Estate of Prescott,* 179 Cal. 192 [175 P. 895], "[t]here is . . . no inflexible rule for measuring the allowance, the question of what is a reasonable compensation de-

pending 'largely upon the circumstances of each particular case.' " (P. 193.) Other factors properly to be considered include "the success or failure of the administration of the trustee; any unusual skill or experience which the trustee in question may have brought to his work; the fidelity or disloyalty displayed by the trustee; the amount of risk and responsibility assumed; the time consumed in carrying out the trust; the custom in the community as to allowances to trustees by settlors or courts and as to charges exacted by trust companies and banks; the character of the work done in the course of administration, whether routine or involving skill and judgment; any estimate which the trustee has given of the value of his own services. . . ." (4(2) Bogert, Trusts and Trustees, 377-381, § 976; see also *Estate of Duffill,* 188 Cal. 536, 547 [206 P. 42]; *Bixby* v. *Hotchkis,* 72 Cal.App.2d 375, 379 [164 P.2d 804].) The trial court has a wide discretion in determining the allowance. (See cases collected in 11 Cal.Jur., 10-Yr.Supp. § 184, pp. 84-86.)

In the present case, each of the working trustees had several years' experience dealing with the properties of the estate before becoming a trustee, as well as other similar business experience. One of them devotes full time to the management of either the trust or properties controlled by it. Another gives more than one-half his time to administering the trust. The fees awarded amount to less than 1 per cent of the book value of the trust corpus, about .52 per cent of its estimated value, and only a little more than $600 per month for each trustee. The record shows that the assets have been profitably conserved and managed with ability and experience far beyond that ordinarily required of a trustee. In these circumstances, it cannot be said either that the trial court's award "exceeds the bounds of reason" (*Silver* v. *Shemanski,* 89 Cal.App.2d 520, 529 [201 P.2d 418]) or that an abuse of discretion is manifest. (*Estate of Mills, supra,* 119 Cal.App.2d 9.)

Another contention is that the trial court abused its discretion in allowing certain administrative expenses, particularly those relating to the assistance of brokers in the investment of securities and the employment of a bookkeeper, as well as accountants. No claim was made by the trustees for brokers' fees with regard to investments, but, on the contrary, any expenses of that nature were borne by the trustees themselves. In the administration of a large trust, it reasonably may be anticipated that both clerical and

professional assistance may be necessary. There was no show-ing that the amounts paid for the services were unreasonable, and the trial court was justified in concluding that they were necessary in the administration of the trust. (*Cf. In re Moore,* 72 Cal. 335, 343 [13 P. 880] ; *Estate of Pratt,* 119 Cal. 156, 157 [51 P. 47].)

Marian's next argument is that the trial court erred in failing to apportion fees according to the services performed by each trustee. She points to this statement of the trial judge: " [P]erhaps there . . . could be some objection made to the amount of compensation that is being paid the widow, because she is not performing the same services that the other two trustees are, but from experience I think the Court is well within its discretion to allow the same compensation, because I think it was undoubtedly the intention of her hus-band that she should be equally compensated." As Marian construes this statement, it indicates that the trial judge awarded a trustee's fee to Catherine merely to match the allowance to Honn and Wales.

Undoubtedly the requirement of section 1122 of the Probate Code, that the court must apportion compensation among trustees "according to the respective services ren-dered," is for the benefit of the trustees, who are not com-plaining on this appeal concerning the division of fees. As stated by the Supreme Court of Wisconsin, "[i]f the total for all these services is a reasonable allowance for the service rendered to the estate by all trustees, there ought to be no interference with it regardless of how it is divided by them between themselves." (*In re Peabody's Estate,* 218 Wis. 541 [260 N.W. 444, 447, 99 A.L.R. 956].) The trial court formally found that a total of $22,500 is a reasonable fee for both ordinary and extraordinary services, and its statement with regard to the widow's portion is not neces-sarily inconsistent with this finding. There is evidence that she participated in the administration of the trust and con-sulted with the working trustees on all major questions for decision.

Finally, Marian contends that the trustees have breached their fiduciary duties toward the trust by occupying positions of conflicting interests, by failing to disclose these facts and the financial conditions of the corporations con-trolled by the trust, and by concealing their receipt of salaries from the corporations. She relies upon the general rule that " [i]n all matters connected with his trust a trustee is bound

to act in the highest good faith toward his beneficiary and may not obtain any advantage therein over the latter by the slightest misrepresentation, concealment, threat, or adverse pressure of any kind.'' (*Overell* v. *Overell*, 78 Cal.App. 251, 256 [248 P. 310].)

There is no charge that the trustees acted so as to prevent their positions in the corporations or their economic conditions from becoming known to the beneficiaries or the court, except that they did not disclose these matters in their account. It is asserted that the failure so to mention them itself amounts to concealment. (Citing *Estate of Keyston,* 102 Cal.App.2d 223 [227 P.2d 17] ; and *Overell* v. *Overell, supra.*)

In the Keyston case, the trustee had acquired a personal controlling interest in a corporation which was the principal asset of the trust, adversely to the beneficiaries. For several years, the corporation had been losing money, and disbursing sums to the beneficiaries as advances. An order denying a petition to remove the trustee was affirmed. Orders settling his account and approving attorney's fees were reversed with directions to render a more specific account as to whether payments made to beneficiaries were as income or advancements and to reconsider the matter of attorney's fees. The order which removed the trustee in the Overell case was upheld upon a record showing that he had manipulated the stock of a corporation so as to authorize an unnecessary increase in it and be in a position to vote for himself an exorbitant salary, conduct clearly antagonistic to the interest of the beneficiaries of the trust.

Neither of these cases holds that a failure to mention in a trustee's account all factors which might bear upon the reasonableness of his claims for expenses and fees amounts to a concealment of those matters so as to compel, as a matter of law, a disallowance of fees or expenses. Here the evidence shows that the trustees held the positions in question for several years before the trust was created, and their financial reports, although not in great detail, represent an accurate summary of the corporate receipts and disbursements.

It is argued that it was improper for the trustees to receive salaries and directors' fees for their services to the corporations. As the Restatement of the Law of Trusts indicates, however, '' [i]t is not necessarily improper . . . for a trustee to receive compensation as an officer of a corporation, shares of which he holds in trust, even though the shares represent a controlling interest in the corporation, if he per-

forms necessary services as such officer, and receives no more than proper compensation for such services." (§ 170, Comment n.) And as stated by Professor Scott in his work on Trusts, "[i]t would seem that the mere fact that he holds in trust shares of a corporation does not of itself make him accountable for the salary which he receives from the corporation, particularly where he was an officer of the corporation and received the same salary before he became trustee of the shares." (2 Scott, Trusts, 804, § 170.22.)

Here the objection is to Mrs. Wales' receipt of salaries as secretary-treasurer from the two corporations controlled by the trust as well as to her fees and those of Honn as directors of one of them. All of these amounts are the same as those received by the trustees in those capacities prior to the death of the trustor. Mrs. Wales, in addition, had received a salary from the trustor as his private secretary before his death, and Honn withdrew from his private business activities in order to serve as trustee. The trial court was justified in concluding that these salaries were not unreasonable but constituted just compensation for a continuation of former duties.

A careful review of the record shows that other contentions are not supported by the evidence, or that they do not bear upon the ultimate issues of the case.

The order is affirmed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.

Appellant's petition for a rehearing was denied November 10, 1954.